**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:   13-cv-2048

**MARILYN SWEET**, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

**COLORADO ROCKIES BASEBALL CLUB, LTD.**, a Colorado limited partnership,

    Defendant.

---

**CLASS ACTION COMPLAINT AND JURY DEMAND**

---

Plaintiff Marilyn Sweet brings this class action complaint against Defendant Colorado Rockies Baseball Club, Ltd. ("Defendant" or "Colorado Rockies") to stop Defendant's imposition of unlawful restrictions on the resale of tickets to its baseball games. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE CASE**

1. Defendant knowingly imposes restrictions on the resale of its tickets that are unlawful under Colorado law—which was specifically enacted to provide Colorado consumers with an unrestricted secondary market for the re-sale of tickets.

2. Colorado Consumer Protection Act ("CCPA") § 6-1-718(3)(a)(IV) declares that:

1

> It is void as against public policy to apply a term or condition to the original sale to the purchaser to limit the terms or conditions of resale, including, but not limited to, a term or condition…That imposes a sanction on the purchaser if the sale of the ticket is not through a reseller approved by the operator.

3.      Instead, and in direct contravention of this law, Defendant forces consumers seeking to participate in the secondary market (by either re-selling their tickets or purchasing re-sold tickets) to exclusively use www.StubHub.com ("StubHub") or face expulsion from the stadium. Moreover, consumers are forced to pay StubHub's inflated fees in the process, of which on information and belief, Defendant receives and retains a portion.

4.      Put succinctly, the CCPA, § 6-1-718(3)(a)(IV) provides that imposing terms and conditions on ticket purchasers that restrict the purchasers' rights to resell their ticket in the marketplace is against the law, but the Colorado Rockies do just that—threatening to invalidate the ticket license if the ticketholder does not comply with its unlawful terms.

5.      By doing so, ticker purchasers, such as Plaintiff Marilyn Sweet, are injured, because they are unable to purchase or resell their tickets in a manner that allows them to satisfy personal preference and maximize profitability without risking invalidation of the ticket license. Through her Complaint, Plaintiff seeks to require Defendant to bring its conduct and tickets into compliance with the law and to recover all damages suffered as a result of its unlawful practices.

**PARTIES**

6.      Plaintiff Marilyn Sweet is a natural person domiciled in the State of Colorado.

7.      Defendant Colorado Rockies Baseball Club, Ltd., is a Major League Baseball ("MLB") franchise, formed as a limited partnership under the Colorado Uniform Limited Partnership Act, with its principal place of business located at 2001 Blake Street, Denver, Colorado, 80205.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2) because (a) at least one member of the putative class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

8. This Court has personal jurisdiction over this case because Defendant is headquartered and conducts its principal operations in this state.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) as (i) Defendant's principal place of business is in this District, and (ii) most of the operative facts giving rise to Plaintiff's complaint occurred in this District.

## FACTS COMMON TO ALL COUNTS

10. Defendant Colorado Rockies is a franchise of MLB and hosts and operates a minimum of eighty-one (81) baseball games each year at Coors Field in Denver, Colorado.

11. Defendant sells between 2 million and 3 million tickets each season for an average of $23.65 per ticket[1]—meaning Defendant grosses approximately $50 million every year from the sale of tickets to its games.

12. A sizeable portion of those tickets are subsequently resold on the Internet via online ticket marketplaces such as StubHub.

13. The Terms and Conditions printed on each Colorado Rockies ticket states:

> [t]his ticket may not be resold or offered for resale (i) via the Internet or any other interactive media, except, if applicable, through the official website of the Colorado Rockies (www.coloradorockies.com) or sites authorized by the Colorado Rockies or (ii) in a manner at a

---

[1] This figure represents the average ticket price for the 2013 season.

price or otherwise in violation of any Federal, State, or local laws/ordinances/regulations. Any such resale will invalidate the license granted by this ticket.

14. As each and every ticket sold by Defendant contains this language, millions of ticket purchasers and fans every year are subjected to restrictions that impose a sanction if the resale of a ticket via the internet is not through a reseller approved by Defendant.

15. Defendant does not provide a list of sites that it authorizes for the resale of tickets via the internet. On information and belief, there are not numerous websites authorized by the Colorado Rockies as the pluralized word "sites" would suggest, but rather only one— www.stubhub.com, "The Official Fan to Fan Ticket Marketplace of the Colorado Rockies."

**History of Colorado Consumer Protection Act § 6-1-718**

16. The Colorado legislature amended the consumer fraud act, the CCPA, in 2008 to include a provision regarding prohibitions and unlawful conditions imposed on ticket sales and resales. This new provision is located at Section 6-1-718.

17. In addition to its text, the legislative history of the amendment illustrates that the Colorado legislature was deeply concerned with protecting consumers specifically with respect to the resale of tickets and securing the public's right to re-sell event tickets to whomever and however they wish (subject to reasonable limitations on "scalping" within certain geographic areas within proximity of the stadiums).

18. In fact, when the amendment was discussed in the Sixty-sixth General Assembly, representatives of the Denver Broncos (National Football League franchise), Colorado Avalanche (National Hockey League franchise), and Denver Nuggets (National Basketball Association franchise) testified and voiced their opposition.

19. The Colorado Rockies did not participate in the debate or provide testimony.

20. The Colorado Senate passed the amendment by an 8-1 margin and Section 6-1-718 of the CPA became effective on March 19, 2008.

**Defendant's Relationship With StubHub**

21. StubHub, a subsidiary of eBay, Inc., is a company that operates an online secondary-market ticket marketplace where consumers can buy and sell tickets to live events, including MLB games.

22. In 2007, MLB Advanced Media—the digital and interactive media arm of Major League Baseball and operator of www.mlb.com and the websites for each MLB franchise, including www.coloradorockies.com—entered into an agreement with StubHub whereby StubHub would serve as the official secondary ticket marketplace of MLB.

23. However, MLB franchises such as the Colorado Rockies were not required to participate in the agreement and instead had the opportunity to opt-out—which at least one franchise, the Boston Red Sox, did.

24. In December 2012 (more than four years after §6-1-718 of the CCPA became law), MLB and StubHub entered into a new agreement that replaced the 2007 agreement.

25. Pursuant to the 2012 agreement, MLB franchises had another opportunity to opt-out of the StubHub deal—which three franchises (the New York Yankees, Los Angeles Angels, and Chicago Cubs) chose to do.

26. The Colorado Rockies did not opt-out of the original agreement and, in violation of Colorado law, has continued to partner with StubHub as its official and exclusively-authorized ticket marketplace.

27. On its official website, the Colorado Rockies have an entire section dedicated to StubHub. When a consumer visits www.coloradorockies.com (the only website, secondary ticket marketplace or otherwise, listed in the Terms and Conditions printed on Colorado Rockies tickets) and clicks on the "Tickets" tab, the consumer discovers that the Colorado Rockies have a whole page dedicated to providing information about buying and selling tickets via StubHub. The webpage even provides hyperlinks to StubHub's website.

28. The new agreement imposed a minimum price restriction effective as of the 2013 season. Under the 2012 agreement, sellers who list MLB tickets on StubHub cannot list them for less than $6.00.

29. MLB franchises and StubHub share the profits gained from a service fee StubHub charges for each sale. On information and belief, which discovery will confirm, this profit sharing is roughly a 50-50 split.

30. The amount of the service charge under the 2012 agreement is $3.00 for tickets under $50.00 and is a percentage of the price above $50.00. Therefore, on information and belief, the Colorado Rockies receive a minimum of $1.50 for each ticket sold via StubHub.

### FACTS RELATING TO PLAINTIFF SWEET

31. Plaintiff Marilyn Sweet has purchased tickets to dozens of Colorado Rockies games, including at least 6 during the 2013 season—always through StubHub.

32. Ms. Sweet, however, has used several *other* online ticket marketplaces to purchase tickets for non-Colorado Rockies events and possesses no loyalty to the StubHub brand.

33.     Because of the unlawful restrictions imposed on Colorado Rockies tickets that threaten to impose sanctions on anyone who does not use StubHub (its only authorized site), Plaintiff has been misled into foregoing rights and opportunities in the online resale market that she otherwise would have had and that are guaranteed by Colorado law. The loss of such rights and opportunities caused her to suffer actual damages.

34.     In addition to the forfeiture of legally guaranteed rights, Plaintiff and putative Class members suffered direct harm in the form of monies paid for the StubHub service fee, which several other online websites where Plaintiff potentially could have purchased the tickets (www.craigslist.com, for example) do not charge. Plaintiff and Class members have also suffered in the form of overpaying for a ticket that contained a provision that was void as against public policy, the mere presence of which wrongfully discouraged consumers from using websites apart from www.stubhub.com. Consumers face the additional risk that their ticket could be improperly invalided as the result of an otherwise lawful ticket resale or purchase.

## CLASS ALLEGATIONS

35.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a Class defined as follows:

> All persons in the United States who purchased a Colorado Rockies ticket for a baseball game at Coors Field in Denver, Colorado from March 19, 2008 to the present.

36.     **Numerosity**:  The exact number of the members of the Class is unknown and not available to the Plaintiff, but it is clear that individual joinder is impracticable. Defendant sells millions of tickets each and every year for games at Coors Field.

37. **Commonality**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to the following:

(a) whether Defendant's conduct described herein violated the CCPA;

(b) whether Defendant has stripped Class members of their legally-protected rights in the online ticket resale market;

(c) whether Defendant has profited from its violation of Colorado's CCPA at Plaintiff and the putative Class Members' expense; and

(d) whether Class members are entitled to damages based on Defendant's unlawful conduct.

38. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, as Plaintiff and other members of the Class suffered the same type of harm and sustained similar damages arising out of essentially the same unlawful conduct of Defendant—its unlawful imposition of sanctions upon the resale or purchase of tickets exchanged anywhere other than through StubHub.

39. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to the Plaintiff.

40. **Predominance and Superiority**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient

adjudication of this controversy, since joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendant. It would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

## COUNT I
### Violation of the CCPA, C.R.S.A § 6-1-718, *et seq*
### (On Behalf of Plaintiff and the Class)

41. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

42. The Colorado Consumer Protection Act § 6-1-718, *et seq.*, protects consumers from unlawful restrictions on the sale and resale of tickets.

43. Section 6-1-718 (3)(a) provides that "it is void and against public policy to apply a term or condition to the original sale to the purchaser to limit the terms or conditions of resale."

44. Section 6-1-718 (3)(a)(IV) further clearly states that it is void and against public policy to apply a term that "imposes a sanction on the purchaser if the sale of the ticket is not through a reseller approved by the operator."

45.   As described herein, Defendant knowingly violates both provisions.

46.   First, Defendant imposes a term on all of its tickets that the ticket cannot be resold or offered or resale over the internet unless such activity is conducted through Defendant's official website or thought sites it authorizes—StubHub. This violates §6-1-718(3)(a)(IV) on its face because it is followed by a threat of sanctions in the form of invalidation of the ticket license.

47.   Second, in connection with its failure to opt-out of the 2012 agreement Defendant applies a policy that no ticket may be listed for less than $6.00. This violates §6-1-718(3)(a) because it is a "term or condition on the original sale to the purchaser." There may be numerous reasons (poor seat location, bad weather forecast, undesirable opponent etc.) why a ticket is not worth $6.00 in the secondary market. As a result, the ticket purchaser loses the opportunity to sell his or her ticket for the market value of that particular ticket at that particular time, which could be less than $6.00.

48.   Furthermore, perhaps most egregiously, Defendant knowingly breaks the law with these provisions. Section 6-1-718 became law in 2008, nearly five years *before* the Colorado Rockies had the opportunity to opt-out of the 2012 agreement. Knowing that such restrictions would violate applicable Colorado law, Defendant should have opted-out and chosen not to have an official secondary-ticket reseller.

49.   As a direct and proximate cause of Defendant's illegal provisions and defiant position not to opt-out of the 2012 agreement, Plaintiff and the Class have suffered and will continue to suffer actual damages in the form of monies taken in the form of excessive service fees, overpayments for their tickets as compared to the value of a ticket that did not contain a

provision that on its face violated state law (and accounting for the risk of improper invalidation of the license), monies lost because the ticket could not be sold for the $6.00 minimum, and other damages to be proven at trial.

50. Accordingly, under the CCPA, Plaintiff and the Class seek actual damages, reasonable cost and attorneys' fees, an injunction against further violations, and a declaration that Defendant's conduct is unlawful.

### COUNT II
### Breach of Contract
### (On Behalf of Plaintiff and the Class)

51. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

52. Defendant and Plaintiff and members of the Class entered into valid and enforceable contracts whereby those Class members are granted a ticket license for a Colorado Rockies game.

53. Consumers, such as members of the Class, purchase goods, services, and licenses under the reasonable assumption that the seller will abide by all applicable laws, rules, and regulations.

54. However, Defendant, by violating CCPA § 6-1-718, has failed to perform this implied condition of the contract.

55. Plaintiff and other members of the Class have suffered damages as a direct result of Defendant's unlawful practices.

56. Plaintiff, individually and on behalf of the Class, seeks damages for the Colorado Rockies' breach of contract, reasonable attorneys' fees, expenses, and costs to the extent allowable.

## COUNT III
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

57. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

58. Every contract under Colorado law contains an implied covenant of good faith and fair dealing. The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract,

59. The Colorado Rockies have discretion, when drafting the Terms and Conditions of the ticket, to impose restrictions on the resale of tickets or not. Customers can obtain no other tickets that would reasonably permit them any access.

60. Defendant abused its discretion and placed restrictions in its tickets that violate Colorado law.

61. Rather than omit the unlawful terms that violate or opt-out of the 2012 agreement—both of which Defendant decided to do even though such decisions contravened state law—Defendant exploits unwary consumers by forcing them to use StubHub for their secondary ticket market needs or face sanctions.

62. As an actual and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, the Class members suffered actual damages. These damages occurred in the form of being denied the ability to sell tickets in a manner consistent with

personal preference and profit-maximizing motives, assumption of risk of invalidation of the license, and monies paid in the form of service fees.

63. Plaintiff, individually and on behalf of the Class, seeks damages for the Colorado Rockies' breach of the implied covenant of good faith and fair dealing, reasonable attorneys' fees, expenses, and costs to the extent allowable.

## COUNT IV
### Unjust Enrichment (*in the alternative to Breach of Contract*)
### (On Behalf of Plaintiff and the Class)

64. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

65. In the alternative to Plaintiffs' breach of contract allegations, the Colorado Rockies have profited by knowingly imposing unlawful terms on Plaintiff and the Class and exploiting consumers through its improper restriction of the secondary market to make more money for itself.

66. Defendant's primary motive in refusing to opt-out of the 2012 agreement and in imposing unlawful resale restrictions is to coerce ticket purchasers into believing they *must* use StubHub and then sharing in the service fee profits resulting from the coercion.

67. Plaintiff and the Class members have no adequate remedy at law.

68. Under principles of equity, good conscience, and as a matter of public policy, Defendant should not be permitted to retain the benefits it has wrongfully received from Plaintiff and the other Class members as a result of its coercive behavior and should be disgorged of such profits and/or be required to make restitution to Plaintiff or the Class.

69. Plaintiff, individually and on behalf of the Class, seeks restitution of all monies Defendant unjustly received as a result of its conduct, as well as interest, reasonable attorneys' fees, expenses, and costs to the extent allowable, as well as all other relief the Court deems necessary to make Plaintiff Sweet and the Class members whole.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Marilyn Sweet, individually and on behalf of the Class, prays for the following relief:

1. An order certifying the Class as defined above, appointing Plaintiff Marilyn Sweet as the representative of the Class, and appointing her counsel as Class Counsel;

2. An award of actual damages;

3. An injunction requiring Defendant to cease its imposition of unlawful restrictions on the resale of its tickets;

4. Declaratory relief stating that Defendant's conduct violates the CCPA;

5. An award of reasonable attorneys' fees and costs; and

6. Such further and other relief the Court deems reasonable and just.

Dated: August 1, 2013                     Respectfully submitted,

                                                           /s/ Steven L. Woodrow
                                                           One of Plaintiff's Attorneys

STEVEN L. WOODROW #43140
swoodrow@edelson.com
MEGAN L. LINDSEY #43817
mlindsey@edelson.com
EDELSON LLC

999 West 18th Street, Suite 3000
Denver, Colorado 80202
Telephone: 303.357.4877
Fax: 303.446.9111

Jay Edelson, Esq.
EDELSON LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Telephone: 312.589.6375

*Attorneys for Plaintiff and the Putative Class*